UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DENNIS L.,

                            Plaintiff,

v.                                                                    CASE NO. 1:25-cv-00091
                                                                      (JGW)
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

### MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docs. 4, 8), as well as Plaintiff's reply brief (Doc. 9). Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 4) is **GRANTED**, Defendant's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**, and the decision of the Commissioner is **REMANDED**.

## I.    RELEVANT BACKGROUND

### A.    Procedural Background

On September 24, 2021, Plaintiff protectively filed an application for supplemental social security income, alleging disability beginning September 24, 2020.  (Tr. 199-205.) Plaintiff's claim was denied initially and upon reconsideration.  (Tr. 74, 89.)  He then timely

requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 137-39.)  Plaintiff appeared with counsel for an online video hearing before ALJ Anthony Dziepak held on October 23, 2023.  (Tr. 38-73.)  On March 6, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 18-37.)  The Appeals Council denied his request for review, (Tr. 1-7), and Plaintiff timely filed his appeal to this Court.

### B.    Factual Background[1]

Plaintiff was born June 3, 1976 and completed school only through tenth grade, with special educational support. (Tr. 75, 228.) He initially alleged his disabling conditions to include "hit by a car when he was 8 years old; fractured skull; comprehension issues; trouble reading, trouble writing; back issues; bulging discs pushing on nerve; difficult to walk; high blood pressure; breathing issues-needs inhaler." (Tr. 76.)

Plaintiff testified about his physical impairments during the hearing before the ALJ, including back and leg pain.  He explained that he had a surgery that provided almost no benefit, but he was scheduled for another attempt at the same surgery later in the year. (Tr. 45-46.) Plaintiff described his symptoms to include extreme pressure in his right leg when walking or standing and pressure in his back as well.  (Tr. 46.)  He explained that walking or standing requires him to hold his leg up, or he may need to sit down to ease burning pain.  (Tr. 47.)  Even when sitting, which causes less pain than standing, Plaintiff described that the pain continues. (*Id.*)  Plaintiff indicated that he could not sit the whole day, as he needs to get up and walk to prevent his leg from falling asleep.  (*Id.*)  Plaintiff described that he would be able to sit for about a half hour before needing to change positions. (Tr. 48.)  He also identified pain from bending and turning. (*Id.*)  He indicated

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

he spent most of his day watching television. (*Id*.)  Plaintiff noted that he may have to get up and stretch or move a little, but he could still concentrate on the television while doing his stretches before sitting back down. (Tr. 64.)

Plaintiff explained that he lived with his brother and parents, and that he and his brother did the house chores and yard work.  (Tr. 49.)  He indicated that when he mows the lawn, he has to take breaks, wait "for about five, ten minutes" and then go back to cutting. (Tr. 50.) He also described that he does some of the cooking and some of the housework, as he is able. (Tr. 62.)  Plaintiff confirmed he can manage all his personal care tasks himself.  (Tr. 65.)

Plaintiff testified that he takes pain medication to help manage his symptoms. (Tr. 51.)  The ALJ acknowledged during the hearing that Plaintiff constantly rubbed his upper thigh, and Plaintiff explained that rubbing his thigh calmed the pain a little.  (Tr. 52.)

In response to the ALJ's questioning, Plaintiff expressed concern about sitting too long at a job, noting he would have to get up and move around. (Tr. 53.)  Plaintiff also acknowledged that he becomes irritable as a result of his pain, causing him to get mad, scream at his brother, or just walk away.  (Tr. 53-54.)

Plaintiff described a bad day to include constant pain in his back and leg, and on those days, he is not able to do much. (Tr. 57.)  He estimated he experienced three to four bad days in a month.  (*Id*.)  On good days, he is able to do tasks, but he may have to stop and rest for five minutes as necessary.  (*Id*.)  Plaintiff explained that he attempted injections to help with the pain, but they did not work. (Tr. 59-60.)  Plaintiff described his pain to become worse throughout the day, where it is not that bad first thing in the morning, but then it gets worse as the day goes on.  (Tr. 61.)

3

The ALJ questioned a vocational expert (VE) regarding off-task tolerances by potential employers:

> Q…So, what is your off-task percentage for unskilled work before most employers would take of it and expect that it be improve[d]?
>
> A. Typically the maximum that is allowed by employers would be up to 10% of the workday.
>
> Q.   Okay, so if I indicate to you that this hypothetical person changes positions frequently enough that it [is] going to be over 10% of the workday and during the positional change they're not going to be on task. So, they need the opportunity to  refocus themselves, stretch, taking them away from their work duties, if it's happening more than six minutes of every hour, and its hour after hour without any improvement, that's going to be work preclusive, correct?
>
> A. Yes, it would be.
>
> Q. So, if it was less than that, so if I allowed somebody every hour to have up to five minutes of positional change allowance assuming that at the end of their work shift they get whatever is expected of them done and there's no compromise in the quality of their work, that would be tolerated?
>
> A. Yes.

(Tr. 66-67.)

### C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant has not engaged in substantial gainful activity since September 24, 2021, the application date (20 CFR 416.971 *et seq*.). (Tr. 23.)

2. The claimant has the following severe impairments: lumbar spine disorder status-post surgery and respiratory disorder (20 CFR 416.920(c)). (Tr. 23.)

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 24.)

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can lift and/or carry ten pounds occasionally, sit for a total of six hours in an eight-hour workday, and stand and/or walk for a total of two hours in an eight hour workday. The claimant also can never climb ladders, ropes or scaffolds, and can never crawl or balance on wet, uneven or vibrating surfaces. Additionally, he can occasionally climb ramps or stairs, stoop, kneel and crouch. The claimant must also avoid pushing and pulling or operating foot controls with the right lower extremity. Further, he cannot work around unprotected heights or heavy moving machinery, such as a forklift. The claimant must also be able to change positions every thirty minutes, with an allowance for two minutes of off-task behavior per positional change or four minutes of off-task behavior per hour within the customary ten percent tolerances. (Tr. 25.)

5. The claimant is unable to perform any past relevant work (20 CFR 416.965). (Tr. 30.)

6. The claimant was born on June 3, 1976 and was 45 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963). (Tr. 31.)

7. The claimant has a limited education (20 CFR 416.964). (Tr. 31.)

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968). (Tr. 31.)

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a). (Tr. 31.)

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 24, 2021, the date the application was filed (20 CFR 416.920(g)). (Tr. 32.)

## II.    LEGAL STANDARD

### A.    Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

**B.     Standard to Determine Disability**

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the

impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.    ANALYSIS

Plaintiff argues that the ALJ's RFC finding was not supported with substantial evidence with regard to the "highly specific" off-task limitation and so remand is required. (*See* Doc. 4-1 at 12.)  According to Plaintiff, the portion of the ALJ's RFC restricting that Plaintiff "…must also be able to change positions every thirty minutes, with an allowance for two minutes of off-task behavior per positional change or four minutes of off-task behavior per hour within the customary ten percent tolerances" is not supported by or based on any medical evidence, opinion, or testimony, and thus arises from the ALJ's own lay judgment.  (*See id.*)

A claimant's RFC is the most he can still do despite his limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical

finding.   20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).  As such, the RFC conclusion "need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo*, 31 F.4th at 78.  Indeed, an ALJ is permitted to "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  "An ALJ need not reconcile every conflict in the record but must set forth the crucial factors in his determination with sufficient specificity to enable a reviewing court to decide whether the determination is supported by substantial evidence*." Rebecca B. v. Comm'r of Soc. Sec.*, 22-cv-00631-HKS, 2025 WL 90625, at *4 (W.D.N.Y. Jan. 14, 2025) (citing *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).

Accordingly, "an RFC determination is not necessarily flawed simply because it contains highly specific limitations that are not formulated directly from a medical opinion." *Danielle L. v. Comm'r of Soc. Sec.*, No. 1:23-cv-809-EAW, 2025 WL 879974, at *3 (W.D.N.Y. Mar. 21, 2025) (citing *Tiffany L. v. Comm'r of Soc. Sec.*, No. 1:20-cv-0677 (WBC), 2021 WL 3145694, at *4 (W.D.N.Y. July 26, 2021)); *see also Barry J. v. Comm'r of Soc. Sec.,* 725 F. Supp. 3d 312, 323 (W.D.N.Y. 2024) ("Accordingly, to the extent Plaintiff's argument is premised on the ALJ affording Plaintiff an off-task and absence limitation without a medical opinion assessing that very same limitation, that argument is not supported by the law, and courts have previously rejected it on several occasions.").

However, an ALJ must adequately demonstrate how the off-task limitation was formulated.  *See Martia P. v. Comm'r of Soc. Sec.*, 1:20-cv-560-DB, 2021 WL 2349397,

at \*4 (W.D.N.Y. June 9, 2021) (remanding when the ALJ did not discuss how he arrived at the 5% off-task limitation that he assigned).  Courts generally recognize that "[w]ithout 'some explanation' from the ALJ 'as to the tether between [the] RFC and the non-stale medical opinions or statements from [the claimant], the RFC [is] based upon [the ALJ's] lay analysis of [the claimant's] limitations, which is not permitted and requires remand.'" *See id.* (quoting *Jordan v. Berryhill*, 2018 WL 5993366, at \*3 (W.D.N.Y. Nov. 15, 2013)). *See also Matthew P. v. Comm'r of Soc. Sec.*, 20-cv-1047, 2021 WL 2946411, at \*2 (W.D.N.Y. July 14, 2021) (noting that "[w]hile the ALJ pointed to records indicating that Plaintiff had normal attention and normal memory, the ALJ does not tie the precise percentage of off-task time to any medical evidence."); *Jacqueline R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-97-EAW, 2023 WL 4360557, at \*5 (W.D.N.Y. July 6, 2023) (remanding, noting that the ALJ "did not undertake any attempt to link the evidence of Plaintiff's symptoms into Plaintiff's specific off-task finding").  However, even if the ALJ's analysis may be technically insufficient, remand is not required when "portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence."  *Jennifer O. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1474 (WBC), 2022 WL 2718510, at \*5 (W.D.N.Y. July 13, 2022) (quoting *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982)).

Here, the ALJ provided no explanation for his off-task finding.  In the RFC formulation, he stated only that Plaintiff "must also be able to change positions every thirty minutes, with an allowance for two minutes of off-task behavior per positional change or four minutes of off-task behavior per hour within the customary ten percent tolerances." (Tr. 25.)  Additionally, in general support of his RFC, he notes "[t]he residual functional

9

capacity further adds postural, manipulative, and environmental restrictions to guard against any exacerbations and for his comfort." (Tr. 30.) He otherwise provided no explanation for this portion of the RFC.

None of the experts opined to a specific off-task time. Consultative examining physician Dr. Hongbiao Liu opined only that ". . . the claimant has moderate limitations for prolonged walking, bending, squatting, stair climbing, carrying heavy weights, prolonged sitting, and standing." (Tr. 615.) Nor does there appear to be any medical record addressing the off-task time or the specifics surrounding the need to change from sitting to standing.

Indeed, the only reference to the need to change positions can be found through Plaintiff's reports. During his consultative examination with Dr. Liu, Plaintiff reported the need to "change position after one hour while sitting or standing." (Tr. 612.) And at the hearing, Plaintiff described that he would be able to sit for about a half hour before needing to change positions. (Tr. 48.) Plaintiff further expressed concern about sitting too long at a job, noting he would have to get up and move around. (Tr. 53.) Plaintiff also testified as to the length of the breaks he would need. For example, he indicated that when he mows the lawn, he has to take breaks, wait "for about five, ten minutes" and then go back to cutting. (Tr. 50.) He generally noted that, on good days, he is able to do tasks, but he may have to stop and rest for five minutes as necessary. (Tr. 57.) Plaintiff also described that he may have to get up and stretch or move a little, but he could still concentrate on the television while doing his stretches before sitting back down. (Tr. 64.)

Thus, the only record support for an off-task limitation associated with position changes comes from Plaintiff's testimony. It is well-settled that it is not error for an ALJ

10

to credit Plaintiff's testimony in implementing an off-task limitation.  *See Talish M. v. Comm'r of Soc. Sec.*, No. 1:24-cv-00648-MAV, 2025 WL 2753158, at *4 (W.D.N.Y. Sept. 26, 2025) (recognizing that an ALJ's "decision to extend the benefit of the doubt to a claimant and to include additional limitations in an RFC to account for self-reported symptoms is not generally a reversible error").  However, the limitation must still be supported by substantial evidence. *See Elder v. Comm'r of Soc. Sec.*, No. 18-cv-1196, 2019 WL 6320355, at *5 (W.D.N.Y. Nov. 16, 2019). ("Without 'some explanation' from the ALJ 'as to the tether between [the] RFC and the non-stale medical opinions or statements from [the claimant], the RFC [is] based upon [the ALJ's] lay analysis of [the claimant's] limitations, which is not permitted and requires remand'").

Here, the ALJ appears to have credited Plaintiff's testimony that he required a break every thirty minutes.  However, there is no explanation or detail as to why the ALJ selected only two minutes as being needed to change positions, as opposed to four or even the five minutes Plaintiff expressly testified he needed.  In fact, there is no evidence in the record that suggests Plaintiff requires only two minutes off-task to change positions. *See Kenneth H. v. Comm'r of Soc. Sec.*, 23-cv-6458-LJV, 2024 WL 5075613, at *5 (W.D.N.Y. Dec. 11, 2024) (recognizing "when the record provides no support for the specific amount of time that a claimant will be off task, a specific finding toward that end is not supported by substantial evidence.")  *See also Julie B.-Z. v. Comm'r of Soc. Sec.*, 23-cv-0535-LJV, 2024 WL 1331187, at * 4 (W.D.N.Y. Mar. 28, 2024) (recognizing that if the ALJ rejects an opinion as to the percentage of off-task time a plaintiff might experience, the ALJ "cannot simply pick a smaller percentage . . . based on the ALJ's own lay judgment.")

11

Further, it is concerning that the ALJ settled on two minutes per position change, for a total of four minutes per hour, given the VE's testimony that any amount of off-task time beyond six minutes per hour would be work preclusive.  (*See* Tr. 67.)  Thus, the limitation appears to be, "[a]t best, . . . from whole cloth" and "[a]t worst, [it] responds to the vocational expert's testimony" that more off-task time would result in the conclusion that Plaintiff could not perform the work that the RFC found he could.  *See Elder*, 2019 WL 6320355, at *6.

The ALJ's failure to tether this limitation to any evidence in the record renders the finding unsupported by substantial evidence.  *See Kenneth H.*, 2024 WL 5075613, at *5 (finding the ALJ's limitation that the claimant required the option for an hourly five-minute position change to be unsupported by substantial evidence when the ALJ did not explain the basis for the limitation nor was there any record evidence supporting the frequency of the positional change nor the amount of time needed to make the positional change); *Tomicki v. Berryhill*, No. 15-cv-847-RJA-MJR, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 11, 2018) (finding the ALJ's restriction that the claimant must be able to change positions briefly (1-2 minutes) at least every half-hour was not supported by substantial evidence when the ALJ did not explain how he reached the restriction and evidence in the record suggested claimant needed to change positions more frequently).

## IV.    CONCLUSION

For the above reasons, remand is warranted.

**ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 4) is **GRANTED;** and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 8) is **DENIED**; and it is further

**ORDERED** that this matter is **REMANDED**, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: April 29, 2026                    J. Gregory Wehrman
Rochester, New York                      HON. J. Gregory Wehrman
                                         United States Magistrate Judge